It is DACA 22-8079. Counsel, we're prepared to hear your argument when you're ready. Good morning, Your Honors, and may it please the Court, William Trackman for Appellant Liesl Carpenter and Appellant Sarah Rogers are with me here today in the courtroom. I'm going to try to reserve about three minutes for rebuttal. Race discrimination occurred when the government started implementing Section 1005 of ARPA. Black letter law is that once an egregious and brazen equal protection violation has occurred, courts have broad actual powers to remedy that violation. Here, four courts determined that Section 1005 implementation constituted race discrimination, but the doors have been closed to my clients since they brought their cases in 2021. Because the government failed to meet its burden on mootness before the district court, the proper course for this court is to remand to the district court for further proceedings, to discovery, and to evaluating any potential equitable remedies to correct the protection violation that occurred in 2021. Counsel, for my purposes, let's assume that the government has done exactly what they needed to do. I need to hear you in regards to the issue of mootness and our ability to afford a remedy. Yes, Your Honor. So with respect to mootness, the district court held that my client's interest was purely forward-looking. That because Section 1005 was repealed in August 2022, there was no further interest that Ms. Carpenter and Ms. Rogers could proceed with. But that, respectfully, is incorrect. They had already had their equal protection rights violated when the government started to implement Section 1005. The government's argument has no limiting principle. Whether it were four payments or 400 payments or 4,000 payments, their argument amounts to the fact that once you repeal a statute, pre-existing equal protection violations simply take flight and can't be remedied. That would be a roadmap for discrimination. Well, first of all, can we agree that injunctive relief is moot? Well, we're talking about injunctive relief in the sense of prospective relief to have an order that our clients be treated equally. Obviously, injunctive relief to say that the statute is unconstitutional is moot. Okay, so injunctive relief to say the statute is unconstitutional is moot. And the only damage—so you're focusing on, I guess, damages. Well, to be clear, Your Honor, we aren't seeking damages per se. We're seeking an order of equal treatment. Now, at the end of the day, because our clients were disadvantaged by the payment of monies to other individuals, there may be some sort of monetary relief. But that would be an equitable relief that doesn't sound in damages or wouldn't implicate sovereign immunity. So the payments—there were four payments made as test run to ranchers in New Mexico. Is that correct? Well, respectfully, Your Honor, we don't know how many payments were made or what the true dollar amount is. The government has asserted that there were at least four test payments made totaling a little bit above $160,000. Yes, they were made to individuals in New Mexico based on four considerations. Even if those payments were clawed back, how does that help your client who doesn't have any right to the money paid to these four New Mexico ranchers? Well, our client's right is to equal protection of the laws. Well, now your client has equal protection because this provision has been struck down. Well, respectfully, Your Honor, we don't think so. We think that just because you prevented future injuries from occurring, that doesn't remedy past injuries that have lingered or haven't been remedied. You don't think that Congress repealing that section has an effect? Well, it certainly has an effect in preventing the other $4 billion that was allocated by Congress. The statute doesn't exist any longer, counsel. We can't make it up. Well, we certainly aren't asking you to rewrite a statute and bring it back into life, but we do think that there are equitable remedies available when the preexisting equal protection injury is not remedied, merely because the triggering statute that authorized those injuries has been repealed. If that were the law, then any government could say, well, we know that a lot of equal protection injuries have occurred, but because we're repealing the statute, you have no remedy for the conduct we've already engaged in. And yet, there are a number of these suits scattered across the United States which were voluntarily dismissed with repeal of Section 1005. Well, that's correct, Your Honor. There are no other cases involving Section 1005. We don't know why that is. Maybe they haven't focused in on these test payments that were made. Well, start there. You're an outlier, which is you're the one case that I'm aware of in which this clawback is being sought. Is that right? Well, to be clear, Your Honor, we aren't seeking specifically clawback or truing up or any particular remedy. We're saying that there must be an equitable evaluation of remedies because there are concrete, egregious equal protection violations. I thought you're not seeking clawback? Clawback is one of the remedies that we've floated in the briefs as one potential remedy. Well, don't you need to tell us what the remedy is? You're kind of getting squishy with me here on whether you're even seeking clawback. I thought that was established. I don't mean to be squishy, Your Honor. The fact that we floated clawback and truing up as two potential remedies in the brief is designed to rebut the government's argument that there is nothing in the real world that could occur based on this court's order. And that's simply not true as a facial matter because clawback and truing up are two potential remedies. But there might be others. There might be a ledger correction or something else. Discovery has never occurred in this case. So we don't know whether these borrowers have the money sitting in a bank account and could simply have the USDA reclaim it. We just don't know anything given that the district court didn't conduct discovery and ruled without that that there can't be an interest in correcting a past equal protection violation. Don't you have an obligation in your complaint to identify what the remedy is? Absolutely, Your Honor. And did you? Did you seek the remedy that you're describing now, which I thought was clawback, but maybe isn't? Did you assert that particularly in the complaint? The district court said no. Right. So the complaint which was filed before these test payments were made at ER 21, paragraph F, says that our clients want to prevent the distribution of funds under Section 1005. Here, some funds have gone out the door before our client's case could be there. We also prayed for general relief, which the district court quoted and didn't find ambiguous or otherwise insufficient. And so the relief of equitable treatment, equal treatment under the law, is certainly one that's available to the district court below. But you're going to have equal treatment under the law because this provision has been repealed. And so going forward, there's no ability to treat people differently based on the race of the rancher. We don't dispute that going forward, Section 1005 is not a statute. What is your injury? How have you been injured by this repealed statute that never was fully implemented? So our injury is that our client's right to equal protection has been denied. You don't need to have a substantive benefit. So nominal damages, is that what you're hoping for? No, Your Honor. To be clear, we aren't seeking damages at all, and the nominal damages are not part of this appeal. That was put in the complaint. But this is a request for an order unwinding or creating equal treatment because the equal protection violations occurred. There's no portion of the Inflation Reduction Act that corrected the remedies in the past. You can envision any protection case like this, whether it's a school desegregation case or a same-sex marriage case, where the courts have said, well, going forward, there's no injury. And so we aren't going to look to the past. But if that were true, it would create a recipe for discrimination on the part of the government. Counsel, who is the equal protection against whom? Against similarly situated farmers and ranchers who received a benefit based on their race. As the Florida court in the Wyndham case decided, there's no right to the ill-gotten gains of a benefit that's based purely on your race. Here, the client, our clients, were disadvantaged because of their race. I've thought about your argument quite a bit, and you're trying to get us to write a law as to satisfy your interest. Let's put you in my position or the court's position. How are we going to write a law that says your equal protection has been violated because you do not stand on the same footing of four people in New Mexico? Well, respectfully, Your Honor, we aren't asking you to write the law. We aren't asking you to say that the statute comes back to life. You've got to explain why we're doing it that way, and you haven't got me anywhere close to explaining why I would write a law or write some reason that you should win. Well, we don't think the case is moot. As the Supreme Court has decided in Chafin, any remedy, no matter how small, is enough to keep a case alive. And an order of the district court would certainly have real world effect. Here's what we've said in the Tenth Circuit. We said, put another way, a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision. I'm trying to get to the point for you as I can see a favor to write a favorable judicial decision, and I can't. I'm having a hard time, counsel, getting there. Respectfully, Your Honor, a favorable judicial decision that the district court needs to proceed with discovery and proceedings and evaluate equitable remedies is an order that will have real world effect. Because at the end of the day, a clawback or a chewing up of our clients or a ledger correction or some other action to correct the equal protection violation that exists today is an order that will have an effect on the real world. I would ask, Your Honor, if... What's a ledger correction? Well, the USDA maintains records of how much people owe, which is how the Section 1005 payments went out in the first place. They know what sort of debt these individuals are involved in. And so if that debt has been erased as part of Section 1005, it doesn't mean that they have to go put a lien on someone's house. But you have nothing to suggest that those debts have been excused at this point, right? Well, as part of what Section 1005... So you want a fishing expedition of discovery to try and figure out if there's something out there that you might want. But don't you have to tell us what you're suing for? So we're suing for equal treatment in terms of the fishing expedition. Well, you have equal treatment now. This statute, and it seems like a wise decision, was repealed. And it never went into full effect. They did, apparently, four test payments that were limited to ranchers in New Mexico. Your clients wouldn't have been able to get those test payments anyway because they don't live in New Mexico. Let me answer a couple of components there. One is that the ledger correction issue is a discovery question. The District Court didn't say this is a fishing expedition, that's why it's moved. In terms of the New Mexico question... No, I'm saying it's a fishing expedition. I'm saying at this point, you have to tell us why this case isn't moot. And you can't say, I don't know why it's not moot, but if you let me do a bunch of discovery, I might find something that will help me convince you it's not moot. Respectfully, Your Honor, that's definitely not what I'm saying. I'm saying it's absolutely not moot because we have an egregious, brazen, equal protection violation that occurred when these test payments were made. Well, if you... Oh, please. But it's never implemented against you. Have your equal protection rights been violated? Well, certainly that's not this case, but perhaps no, Your Honor. Here, there's no dispute that Section 1005 was partially implemented. The government has conceded at least four payments, but again, there might be more. Counselor, you can tell there's some puzzlement on what the injury is that you're seeking or that you're asserting. Is the injury that the four New Mexico farmers got money, or is it that your Wyoming and Colorado clients did not get money? And are they in a narrow class of people who can assert this, have standing to assert it? Or can anyone in the audience come in and assert that under your theory? I don't know whether anyone in the audience is similarly situated or whether there might be a tie bar. What do you mean similar situated? Doesn't it matter what state your ranch is in? Well, yes, but of course, New Mexico was picked because it had a high number of ARPA recipients, which is itself a race-based consideration. Is that your claim? Is your claim that New Mexico shouldn't have been picked to the isolation of other states? No, Your Honor, no. We can't figure out your claim. The playing field that we're looking at is the playing field of Section 1005 would-be beneficiaries. That's what the statute is. Our clients didn't have a level playing field under Adirondack or Northeastern Florida to have the benefit. Here, it's the disadvantages that other people who are similarly situated ranchers and farmers were treated better based on their race. And the fix is what? You want a court order that says what? So one possible court order would be a clawback of those funds. Another would be a truing up of our clients to create a level playing field. And when you say truing up, you mean give them the same treatment? Yes, Your Honor. That's now not allowed under the statute. Well, the order from a court can be that equal treatment occurs. I suppose the same thing could occur if the statute said we shall confiscate them. So we un-repeal the statute? We're not asking you to do that, Your Honor. Well, we'd have to. Well, we disagree, Your Honor. Respectfully, we think that the court— Well, everybody else out there who's similarly situated to your client would be able to make the same claim. Well, we don't agree, Your Honor. I think those claims would likely be time-barred. They certainly haven't been brought since the repeal of ARPA. And we have no idea whether there are other individuals who made this specific calculation that, well, we've decided to go for what might be a minor benefit or a clawback. Wouldn't this have wide, wide-ranging consequences? I mean, we're talking about one narrow instance here. But I can think of all kinds of instances in which someone may claim discrimination or get money and so forth. And it seems like you're just opening up a complete can of worms. And your only response to that is, well, the statute of limitations will keep it from being that big. Well, it certainly latches as well if someone were time-barred. But those cases wouldn't be moot. Here, our clients were injured. I don't think there's any dispute that when the test payments went out, they went out. Do you have a single case that's like this one where the clawback remedy or whatever remedy you're seeking is not pleaded and the court has said it would be moot except there's a general relief for damages, a prayer for relief, and so it's not moot? I haven't encountered that case. The government certainly didn't argue that below. The district court didn't reach that issue. But here, we think that despite not adequately pleading it, RESNAC stands for the position that even if a client or even if a party doesn't request relief, the case is not moot. If there's any order that can have real-world effect. I don't think there's a dispute that there is an order that could have real-world effect. Thank you, counsel. We're kind of on a tight schedule today, so I'm going to hold everybody to the clock. And you're a little bit over, but I appreciate your answering our question, and that's why. Thank you. Good morning. May it please the court. Jeff Sandberg for the United States. The district court has correctly concluded that there's no basis upon which the litigation could proceed here because, as this court has said, a plaintiff has no legally cognizable interest in the constitutional validity or invalidity of an obsolete statute. Congress has definitively repealed the law that they seek to challenge. Yet, plaintiffs here are asking this court to remand for, first, litigation on the substantive constitutionality of the law, which would involve fact and probably expert discovery into did Congress have a sufficient factual basis for concluding that race-conscious benefits to minority farmers was justified? And assuming that that could not be resolved on summary judgment, we would have a whole trial in which the question is, did Congress have a sufficient basis under the law to enact this statute that it has now repealed? Let's assume the statute's unconstitutional. Let's just assume that. That's a violation of equal protection. It's been repealed, but we have four test payments that were made to ranchers in New Mexico. Did that injure the plaintiffs here? No. Well, somebody else got something they weren't entitled to. Right. As best I can figure it out, there's kind of two theories of injury swimming in the case at this point. There was one theory of injury that was coherent that was actually pled in the complaint. If you look at paragraphs 47 to 51 and 58 of the respective complaints, it's the same numbering across both complaints. Ms. Carpenter and Ms. Rogers said it would be really nice to have access to this money that Congress is making available to other folks. I can invest in my farm. I can pay down debt. And I am being deprived of the opportunity to participate in this program on the basis of race. And the injury isn't just that she didn't get the money. It's that there is a barrier to accessing the funds. If you look at this court's case law in Davey Bond, it talks about the right that a plaintiff has in an equal protection case is a right to receive benefits to be distributed according to classifications that don't differentiate on the basis of impermissible criteria. OK. That injury is totally moot at this point. No one can get benefits now. There's no possibility to true up for Ms. Carpenter and Ms. Rogers because there's no statutory authority to provide benefits under this program to anyone. The second theory of injury that I hear coming forward is that the four partial test payments themselves injured Ms. Rogers or Ms. Carpenter. But the plaintiffs didn't have standing. If they had asserted that claim in the complaint, they would have lacked standing to do so at that point. And they certainly lack standing to do so now. Because those test payments were kind of a program within a program itself. USDA decided, I'm going to reach out to five people who have an established working relationship in the state of New Mexico who I think are going to be receptive to a pilot program and see if they want to participate. And Ms. Rogers and Ms. Carpenter were not among the class of people that USDA was considering reaching out to for pilot programs for other reasons wholly beyond their race. They're not in New Mexico. But certainly there's two reasons. One is they don't live in New Mexico. The other is that they're not minorities. They don't fall within the class that the statute was designed to benefit. So I mean, I guess it depends on whether it has to be the cause or a cause. Well, this court said in Davy Bond, which I mentioned before, that where there's no way that a plaintiff could get the benefit that they're suing about for other reasons apart from the allegedly impermissibly consideration, they don't have standing to sue. There it was about students who were not residents of Kansas but were attending Kansas universities who wanted to sue over the disparate tuition charged as between non-residents and residents of Kansas who happen to be non-US citizens and who lack lawful status in the country. And this court said, look, if you yourself couldn't benefit for the in-state tuition for reasons unrelated to your citizenship or alienage status, then you can't come forward and litigate. You still have to be within the class of people who could otherwise qualify for the benefit. And they're not for those test payments here. And I think this really is an instance where Ms. Carpenter and Ms. Rogers now don't stand differently than any of us in the room who might have a principal disagreement, perhaps a firmly held disagreement with what happened in the past. But your disagreement with what happened in the past does not constitute an ongoing injury. And here they only seek injunctive and declaratory relief. And this court's case law is particularly clear that the fact that something harmed you in the past is not enough to get an injunction or declaration now. And here, for the reasons I've explained, they weren't even injured in the past because they wouldn't have had standing to challenge the test payments. I'd be happy to answer any other questions that the court may have. And I thought there was a claim for nominal damages. But I guess there isn't now? It had been put in the complaint. The government maintained that that claim was barred by sovereign immunity. They have not challenged that on the deal. And it would be barred by the 11th Amendment, wouldn't it? The 11th Amendment isn't applicable as against the federal officers here. But yeah, federal principles of sovereign immunity would bar them, yes. So this is just about whether we should remand to have a trial on the constitutionality of a statute, assuming that the court finds, after all of that effort, that the statute was unconstitutional. Is there, then, a basis to enter an injunction or a declaration on the basis of an alleged past injury that occurred? And there's no basis for the court to order that relief. I would just note that, to the extent this court harbored any doubts, it can raise to a sponte the question of whether equitable relief would be appropriate at all in these circumstances. That's the prudential mootness doctrine that the Judge Gorsuch opinion and Winsler talked about. But I think the district court properly dismissed these cases under Article III and that this court can affirm on that basis. Any other questions? No. All right, thank you, counsel. Thank you both for your arguments this morning. The case is submitted.